TAYLOR, J.
 

 In this appeal and cross-appeal involving the construction of a home upon land owned by the buyer, the trial court certified a question to our court as one of great public importance. We restate the certified question as follows:
 

 WHETHER THE ESCROW DEPOSIT REQUIREMENT OF SECTION 501.1375, FLORIDA STATUTES, APPLIES TO GENERAL CONTRACTORS WHO CONTRACT TO BUILD A SINGLE-FAMILY RESIDENCE UPON LAND OWNED BY THE CONSUMER AT THE TIME THE CONTRACT IS SIGNED.
 

 For the reasons discussed below, we answer the certified question in the negative.
 

 Factual Background
 

 Sean and Jacqueline McLellan entered into a written contract with JPG Enterprises, Inc. (“JPG”) for the construction of a single-family house on real property already owned by the McLellans. They deposited $15,384.70 towards the purchase price. Ultimately, the McLellans can-celled the contract due to a delay that was neither party’s fault. JPG asserted that it was entitled to keep the deposit based on the wording of the contract.
 

 The McLellans sued JPG in county court seeking a return of their deposit. Their third amended complaint contained three counts: (I) Breach of Contract, (II) Violation of the Florida Deceptive and Un
 
 *823
 
 fair Trade Practices Act, and (III) Violation of Florida Statute § 501.1375. In Count III, the McLellans alleged that JPG was a “building contractor” and “developer” who, pursuant to the statute, had to deposit monies in an escrow account on their behalf so that the money could be returned if the McLellans properly terminated the contract.
 

 After a trial in county court, a jury found that JPG breached the contract by not returning the remainder of the deposit (Count I). As to Count II, the trial court directed a verdict, rejecting the Deceptive and Unfair Trade Practices claim as a matter of law. The court tried Count III non-jury and found that JPG violated section 501.1375, Florida Statutes (2008). Accordingly, the court entered final judgment in favor of the McLellans on both counts. JPG moved for a rehearing as to the statutory violation finding. The court denied the motion but noted that this was a case of first impression and requested review and guidance from our court on interpreting section 501.1375, Florida Statutes.
 
 [1]
 

 JPG argues that the trial court erred in finding that it violated section 501.1375, Florida Statutes, because the statute does not apply to contracts entered into between a building contractor and a party for the construction of a house upon real property already owned by the party at the time the contract is signed. JPG thus urges us to answer “No” to the question certified by the trial court.
 
 [2]
 

 “[T]he central purpose of statutory interpretation is deciphering and giving effect to legislative intent.”
 
 Metro. Cas. Ins. Co. v. Tepper,
 
 2 So.3d 209, 213 (Fla.2009) (citing
 
 State v. J.M.,
 
 824 So.2d 105, 109 (Fla.2002) (“It is well settled that legislative intent is the polestar that guides a court’s statutory construction analysis.”)). Legislative intent is chiefly derived from the language of the statute.
 
 Id.
 
 A court can resort to statutory construction only when a statute’s language is not plain and unambiguous.
 
 Id.
 
 (citing
 
 Forsythe v. Longboat Key Beach Erosion Control Dist.,
 
 604 So.2d 452, 454-55 (Fla.1992)). “It is axiomatic that all parts of a statute must be read
 
 together
 
 in order to achieve a consistent whole,” and “[w]here possible, courts must give full effect to
 
 all
 
 statutory provisions and construe related statutory provisions in harmony with one another.”
 
 Forsythe,
 
 604 So.2d at 455.
 

 Section 501.1375, Florida Statutes, is titled “Deposits received for purchase of residential dwelling units; placement in escrow; waiver; exceptions.” The statute requires a “building contractor” or a “developer” to hold certain deposits of a prospective buyer of a one- or two-family residential dwelling unit in an escrow account unless the buyer waives the escrow requirements in writing. § 501.1375, Fla. Stat. The statutory definition of a “building contractor” is “any person who, for compensation,
 
 constructs and sells
 
 one-family or two-family residential dwelling units, except for a person who sells or constructs less than 10 units per year statewide.” § 501.1375(l)(a) (emphasis added). The definition of a “developer” is “either a building contractor who offers new residential units
 
 for sale
 
 or any person who offers a new one-family or two-
 
 *824
 
 family residential dwelling unit
 
 for sale,
 
 except for a person who sells or constructs less than 10 units per year statewide.” § 501.1375(l)(b) (emphasis added).
 

 When considering the meaning of terms used in a statute, courts look first to the terms’ ordinary definitions.
 
 Tepper,
 
 2 So.3d at 213. Critical terms used throughout section 501.1375 are “purchase,” “purchaser,” “purchase price,” “sale,” and “seller.” These terms, in them plain and ordinary sense, refer to the purchase and sale of real property, in addition to whatever structure may be built upon the propei'ty. They are not ordinarily used to describe agreements solely for the performance of construction services.
 

 In addition, the statute makes numerous references to the term “closing,” which is defined as follows: “the point in time at which legal title to the real property shall transfer from grantor thereof to grantee.” § 501.1375(l)(c), Fla. Stat. The statute’s definition of “closing” and its use of that term throughout the statute suggest that section 501.1375 was intended to apply to the sale of single-family residences at a “closing.”
 

 The statute specifically provides that “the building contractor or developer shall be entitled to any interest accrued by the account,
 
 payable at closing.”
 
 § 501.1375(4) (emphasis added). Similarly, it states that if the building contractor or developer borrows money equal to the deposit for construction purposes, the interest may be recovered from the buyer
 
 “at the time of closing.”
 
 § 501.1375(4) (emphasis added). Moreover, it provides that if the funds of the buyer have not been previously disbursed in accordance with the statute, “they shall be disbursed to the building contractor or developer
 
 at the closing of the transaction.”
 
 § 501.1375(7)(e)(empha-sis added).
 

 The McLellans argue that the plain language of section 501.1375 demonstrates that the legislature intended the statute to apply to all building contractors who contract to build a single-family residence, regardless of who owns the land on which the residential dwelling unit is to be built. They argue that the statute is a remedial statute, whose primary purpose is to protect the deposits consumers pay to contractors and developers, and that the statute does not expressly limit this protection to a consumer who is buying both the real property and the residential dwelling unit from the building contractor.
 
 [3]
 

 Indeed, the preamble to the section 501.1375, Florida Statutes, which was enacted in 1980, reveals its remedial purposes. The preamble to Chapter 80-386 summarizes the purposes of the statute as follows:
 

 WHEREAS, as a condition precedent to the formation of a contract for the construction and sale of a residential dwelling, building contractors and developers generally require an advance deposit from the purchaser in the form of cash, and
 

 WHEREAS, the Florida Statutes contain no provisions requiring building contractors or developers who create homes or residences other than condominiums, or who offer noncondominium property for sale or lease, to pay into an escrow account any portion of advance deposits received, and
 

 WHEREAS, the financial collapse of a number of developers and building contractors doing business in the state has
 
 *825
 
 recently resulted in the loss of purchasers’ advance deposits not required by Florida Statutes to be paid into and maintained in escrow accounts ...
 

 Remedial statutes are entitled to a liberal construction so as to advance the remedy provided where it is consistent with the legislative purpose.
 
 Raymar Constr. Co. v. Lopez-Soto,
 
 547 So.2d 282, 284 (Fla. 2d DCA 1989). Although the McLellans make a reasonable argument that the legislature intended to provide broad protection to new home builders, including those who build on their own lots, the plain and unambiguous language of the statute demonstrates otherwise. As discussed above, the statute, by its very terms, applies to transactions involving a “closing” between a “developer” or a “building contractor” and a buyer, where legal title to both the dwelling unit and the underlying land is conveyed to the buyer. No closing occurs when a consumer contracts with a general contractor to construct a single-family residence on the consumer’s land because the consumer already owns the land.
 

 We further note that section 501.1375(8), Florida Statutes, which prohibits a construction lien on escrow deposits, evinces a legislative intent for section 501.1375 to apply to transactions involving a closing where the seller owns the land and the residence. As explained in the brief submitted by The Real Property Probate & Trust Law Section of the Florida Bar:
 

 In short, section 501.1375(8) protects buyers by requiring purchase deposits to be held in escrow and preventing lienors from making any claim against the deposit. This makes sense only when the owner of the property is also the seller. If the buyer owns the property, then the property is subject to construction liens by all lienors including the contractor. The contractor should be using the deposit to pay construction costs thereby reducing the owner’s exposure to construction liens against the property. In fact, sections 713.345 and 713.346 arguably require the contractor to spend the deposit to pay for labor, services, and materials used for the improvements.
 

 Stated another way, if the owner of the property is the buyer of construction services, the buyer’s concern is not that the deposit be put in an escrow account and held until the project is completed. Instead, the buyer’s concern is that the deposit is spent on the project and its exposure to construction liens is reduced. This concern is addressed in sections 713.345 and 713.346 and, arguably, by the entire process established by Chapter 713. In contrast, if the buyer does not own the property, then the buyer’s concern is the deposit.
 

 In sum, we conclude that, under the facts of this case, JPG is not a “building contractor” or a “developer,” as contemplated by the statute, because in merely constructing a residence upon property owned by the McLellans, it was not engaged in the sale of a dwelling unit and the underlying land. There was no “closing” because title to the land already resided in the owners and JPG did not convey to them legal title to the dwelling unit or underlying land. Accordingly, JPG was not required to comply with the escrow • deposit requirements of section 501.1375.
 

 We therefore reverse the final judgment entered against JPG as to the trial court’s finding that JPG violated section 501.1375 (Count III). Further, we answer the certified question presented by the trial court in the negative: Section 501.1375, Florida Statutes, does not apply to a general contractor who contracts to build a single-family residence upon land
 
 *826
 
 owned by the consumer at the time the contract is signed.
 

 Reversed and Remanded.
 

 WARNER, and POLEN, JJ., concur.
 

 [1]
 

 . Following oral argument in this appeal, we requested and received amicus briefs on the certified question from The Real Property Probate & Trust Law Section of the Florida Bar and tire Florida Bar Consumer Protection Law Committee. We acknowledge their expertise and experience in this area of the law and express our gratitude for their assistance.
 

 [2]
 

 . This is also the position taken and argued by The Real Property Probate & Trust Law Section of the Florida Bar in its amicus brief.
 

 [3]
 

 . This is the position taken and argued by the Florida Bar Consumer Protection Law Committee in its amicus curiae brief.